UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


WILLIAM LEWIS,

          Plaintiff,                  CIVIL ACTION NO. 08-14529

       v.                       DISTRICT JUDGE PATRICK J. DUGGAN

COMMISSIONER OF SOCIAL        MAGISTRATE JUDGE VIRGINIA MORGAN
SECURITY,

          Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action for judicial review of the defendant's decision denying plaintiff's

application for social security disability benefits.  The relevant period for judicial review of the

denial of Title II benefits determination in this case is between January, 1995 and March 31,

2000.  In 2005, plaintiff filed an application for disability benefits alleging that he became

disabled in January, 1995 due to bilateral carpal tunnel syndrome.  Plaintiff was insured for

disability only through March 31, 2000.  The ALJ found that plaintiff was not disabled because

he could still perform a significant number of jobs.  In the complaint, plaintiff alleges only one

issue: whether the ALJ misapplied the Medical-Vocational guidelines (the Grids) to a borderline

situation; that is, that since plaintiff turned 55 eleven months after his insured status expired, the

ALJ should have applied grids applicable to a person age 55 (of advanced age) and found him

disabled.  Since that did not occur, plaintiff argues that the finding is not supported by

- 1 -

substantial evidence.  Defendant contends otherwise.  For the reasons set forth in this report, it is

recommended that the defendant's motion for summary judgment be granted, that of the plaintiff

denied, and the decision denying disability benefits be affirmed.

At the time of the ALJ's decision plaintiff was 61 years old; he was 54 years old on the

date his insured status expired and turned 55 eleven months later (February 25, 2001).  He

stopped attending school in the eleventh grade, can read and write, and has a "limited"

education.  He has past relevant work as a "parts boxer." (Tr. 51, 54, 92, 460)

**Standard of Review**

The issue before the court is whether to affirm the Commissioner's determination.  In

Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989), the court held that:

> Judicial review of the Secretary's decision is limited to determining
> whether the Secretary's findings are supported by substantial
> evidence and whether the Secretary employed the proper legal
> standards in reaching her conclusion.  42 U.S.C. §405(g);
> Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L. Ed.
> 2d 842 (1971).  Substantial evidence is more than a scintilla of
> evidence but less than a preponderance and is such relevant
> evidence as a reasonable mind might accept as adequate to support
> a conclusion.  Consolidated Edison Co. v. NLRB, 305 U.S. 197,
> 229, 59 S.Ct. 206, 83 L. Ed. 2d 126 (1938).  The scope of our
> review is limited to an examination of the record only.  We do not
> review the evidence *de novo*, make credibility determinations nor
> weigh the evidence.  Reynolds v. Secretary of Health and Human
> Services, 707 F.2d 927 (5th Cir. 1983).

Brainard, 889 F.2d at 681.

- 2 -

To establish a compensable disability under the Social Security Act, a claimant must demonstrate that he is unable to engage in any substantial gainful activity because he has a medically determinable physical or mental impairment that can be expected to result in death or has lasted, or can be expected to last, for at least 12 continuous months.  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a).  An administrative law judge "making a determination as to [social security] disability ... undertakes a five-step sequential evaluation process mandated by regulation." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir.2004).  In the first four steps, which are not at issue here, the claimant is required to show specified matters that establish disability. If the claimant does so, including establishing that under the claimant's "residual functional capacity the claimant can [not] perform his past relevant work," the burden then shifts to the Commissioner to show that "based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled." *Hensley v. Astrue* 2009 WL 2146467, 1 (6th Cir., 2009), citing *Wilson*.

The preceding statutory requirements have been distilled into a regulatory framework that sets forth a five-step sequential analysis used to determine whether a particular applicant for disability benefits is indeed "disabled."  In *White v. Commissioner of Social Sec.* 572 F.3d 272, 282 (6th Cir. Mich, 2009) this circuit has summarized the framework as follows:  (1) The claimant must first show that she is not engaged in substantial gainful activity. (2) Next, the claimant must demonstrate that she has a "severe impairment." (3) A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the

- 3 -

durational requirement and "meets or equals a listed impairment." (4) If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. (5) Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work (see also *Foster v. Halter,* 279 F.3d 348, 354 (6th Cir.2001), *see also* 20 C.F.R. § 404.1520(a)(4)(I)-(v).

**Background**

Here, the ALJ found that plaintiff had bilateral carpal tunnel syndrome but that his testimony of complaints and functional limitations was not entirely credible. The plaintiff was unable to perform his past relevant work but retained the residual functional capacity (RFC) to do light work, with lifting limited to ten pounds, standing and walking limited to 6 hours, and no pushing or pulling with upper extremities, no overhead reaching, and up to frequent but not constant handling, fingering, or feeling. (Tr. 17-20)  Considering the testimony of the vocational expert (VE) and the grid Rule 202.10, the ALJ found that plaintiff could perform other work which existed in significant numbers.   This included information clerk (1700 jobs), visual inspector (2200 jobs), and security guard (6000 jobs).  In using the Grid, the ALJ used as a framework Rule 202.10 for persons able to do light work and closely approaching advanced age; the plaintiff argues that it should be 202.11, applicable to persons of advanced age (55 and over).  Plaintiff argues that he was within eleven months of reaching age 55 at the time he was

- 4 -

last insured, an age at which he would have been found "disabled" under the guidelines, but the ALJ applied the guidelines for persons aged 50-54, and found him "not disabled." *See* Vocational Rules 202.10 through 202.12, Appx. 2 Subpart P, Regulations No. 4.

**The Grids and Borderline Situations**

There are two parts to plaintiff's issue: (1) Is plaintiff a person whose age comes within the borderline range and would application of the higher age category result in a decision of disabled?  See, *Bowie v. Commissioner of Social Sec.* 539 F.3d 395, 396 -397 (6th Cir.,2008); and (2) If so, did the ALJ sufficiently articulate the reasons that the higher age category was not applied.  Before considering these, some background as to the requirements in this area is necessary.

The SSA has created Medical-Vocational Guidelines ("grids") to standardize disability determinations in the fifth step. *Heckler v. Campbell,* 461 U.S. 458, 461, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). The grids are found in the regulations and are a shortcut to eliminate the need for calling a vocational expert.  *Hurt v. HHS,* 816 F.2d 1141 (6th Cir. 1987).  As was noted in *Kirk v. Secretary of HHS*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983):

> "When the claimant does match one of the grid's patterns, then all the grid does is announce that substantial gainful work is available in the national economy for that particular individual; in other words, once a finding is made that the individual can do light work, for example, the grid operates to declare that light work is available."

667 F.2d at 535.

The grids are not applicable to predict disability when non-exertional limitations are the focus of the impairment, and should be applied only when the individual is capable of performing a wide range of jobs at a particular level, i.e., sedentary, light or medium. *Kirk*, 667 F.2d at 528-529; *Hurt,* 816 F.2d at 1143.

These grids are based on a series of rules and synthesize the relevant vocational factors of age, education and work experience along with residual functional capacity by categorizing each factor and creating tables based on these categories. 20 C.F.R. § 404, subpt. P, app. 2, Rule 200.00(a). For example, age is divided into three categories: younger person (18-49), person closely approaching advanced age (50-54) and person of advanced age (55 and over). 20 C.F.R. § 416.963. Persons of "advanced age" are subject to "special rules" as such age "significantly affects a person's ability to adjust to other work." 20 C.F.R. §§ 404.1563(e), 416.963(e).

With respect to application of the particular grid, the regulations require that the ALJ "not apply the age categories mechanically in a borderline situation." 20 C.F.R. § 416.963(b), *Bowie v. Commissioner of Social Sec.* 539 F.3d 395, 396 -397 (6th Cir.,2008). If a claimant is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination ... that [he] is disabled, [the ALJ] will consider whether to use the older age category after evaluating the overall impact of all the factors." *Id.*

The regulations explain this to claimants as follows:

**How we apply the age categories**. When we make a finding about your ability to do other work under § 404.1520(f)(1), we will use the age categories in paragraphs (c) through (e) of this section. We will use each of the age categories that applies to you during the period for which we must determine if you are disabled. *We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a*

- 6 -

*few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.*

20 C.F.R. § 404.1563(b) (emphasis added)

To further clarify this regulation, the SSA Appeals Council has noted that using "the higher age category is not automatic" in every borderline situation. Soc. Sec. Admin., Application of the Medical-Vocational Guidelines in Borderline Age Situations, Hearings, Appeals, and Litigation Law Manual II-5-3-2 (1993) ( "HALLEX"); *See, Crawford v. Barnhart* 556 F.Supp.2d 49, 53 (D.D.C.,2008), *accord Russell v. Comm'r of Soc. Sec.,* 20 F.Supp.2d 1133, 1135 (W.D.Mich.1998). The regulations note that advancing age increasingly limits a person's ability to adjust to a new type of work. 20 C.F.R. § 416.963(a). The ultimate question, though, is whether the claimant has the ability to adjust to other work. *see* Soc. Sec. Ruling 83-10 (1983) (explaining that the "ultimate question in the medical-vocational evaluation ... is whether work that an individual can do functionally and vocationally exists in the national economy").

In determining whether a given case presents a borderline age situation, courts have not always been consistent.  Some have stated that the relevant date  is when the ALJ issues his opinion. HALLEX II-5-3-2 instructs adjudicators to consider applying this interpretation "whenever the age category changes within a few months after the alleged onset date, the date last insured (or the prescribed period) or the date of the ALJ's decision" see also *Fried v. Sullivan,* 1991 WL 180296, at *1 (9th Cir. Sept. 13, 1991); *cf.* 20 C.F.R. § 404.620 (setting the ALJ's decision as the cutoff date to determine eligibility for disability insurance benefits).

- 7 -

Borderline-age consideration has been measured as of the date of the ALJ's decision for SSI purposes. *See Swan,* 2004 WL 1529270, at *9 n. 12 (citing *Crady v. Sec'y of Health & Human Servs.,* 835 F.2d 617, 620 (6th Cir.1987)). Here, the parties agreee that for SSD purpose in this case, it is measured from the claimant's date last insured. *See Van Der Maas v. Commissioner of Social Sec.* 198 Fed.Appx. 521, 528, 2006 WL 2986514, 7 (6th Cir,2006)(unpublished).

If application of the higher category would result in a finding of "disabled," the ALJ is required to make a factual finding as to whether the higher category should be used. *See Pickard v. Commissioner of Soc. Sec.,* 224 F.Supp.2d 1161, 1167 (W.D.Tenn.2002), *see also Bush v. Astrue,* --- F.Supp.2d ----, 2008 WL 867941, at * 5-6 (S.D.W.Va. Mar. 28, 2008) (citing Social Security Administration's "Hearings, Appeal and Litigation Law Manual" HALLEX), II-5-3-2). Since application of the age category, 20 C .F.R. § 404.1563, is a step-five issue, the burden of showing that a claimant's characteristics match the Grid lies with the Commissioner. *Bush,* 2008 WL 867941, at *7; *Pickard,* 224 F. Supp 2d. at 1169. *See also, Collins v. Commissioner of Social Sec.* WL 2302695, 7 -8 (S.D.Ohio,2008)

In *Bowie v. Commissioner of Social Sec.* 539 F.3d 395, 397 -398 ( 6th Cir.,2008), the court found that a claimant presents a borderline age situation when: (1) the claimant's age is within a few days or months of a higher age category; and (2) use of the higher age category would result in a finding of disability. *Id.* If a claimant presents a borderline situation, the ALJ is directed to decide whether it is more appropriate to use the claimant's chronological age or the higher age.

- 8 -

To do this, the ALJ takes a "sliding scale" approach. Under this approach, the claimant must show progressively more additional vocational adversity(ies)-to support use of the higher age-as the time period between the claimant's actual age and his or her attainment of the next higher age category lengthens.  Examples of "additional vocational adversities" are the presence of an additional impairment that infringes on the claimant's remaining occupational base; having only a marginal ability to communicate in English; or a history of work experience in an unskilled job in one isolated industry or work setting. Absent a showing of additional adversity(ies) ... the adjudicator will use the claimant's chronological age.

The court held that although ALJs are obligated by this text not to apply the age categories mechanically and to consider whether use of an older age category would be appropriate in a borderline case, nothing in the language obligates an ALJ to address a claimant's borderline age situation in his opinion or explain his thought process in arriving at a particular age-category determination. Rather, the regulation merely promises claimants that the Administration will "consider" veering from the chronological-age default in borderline situations. *Bowie v. Commissioner of Social Sec*. 539 F.3d 395, 399 -400 (6th Cir.,2008)

The Bowie court noted that its holding was consistent with the procedural guidance to the staff and adjudicators of the Office of Hearings and Appeals set forth in the HALLEX. In section II-5-3-2, the Associate Commissioner of Hearings and Appeals provided an Appeals Council interpretation of 20 C.F.R. § 404.1563 entitled "Application of the Medical-Vocational Guidelines in Borderline Age Situations," which interpretation directs ALJs to consider whether the claimant has presented "additional vocational adversities" in determining whether to veer

- 9 -

from a claimant's chronological age in a borderline situation. HALLEX II-5-3-2. With respect to

borderline age situations, the Council advised:

> Absent a showing of additional adversity(ies) justifying use of the higher age category, the adjudicator will use the claimant's chronological age-even when the time period is only a few days. *The adjudicator need not explain his or her use of the claimant's chronological age.*

*Id.* (emphasis added).

In *Van Der Maas v. Commissioner of Social Sec.* 198 Fed.Appx. 521, 528, 2006 WL

2986514, 7 (6th Cir,2006)(unpublished) but cited with approval by the majority in *Bowie v.*

*Commissioner of Social Sec*. 539 F.3d 395, 403 -404 (6th Cir,2008), the court upheld the denial

of benefits even though the ALJ failed to explicitly mention the sliding scale.  The ALJ did

articulate the two factors relevant to the borderline age analysis.  The court found upon review of

the ALJ's decision that the ALJ was unpersuaded by Van der Maas's allegations regarding the

extent of her impairments and that the ALJ believed that many of Van der Maas's health

problems arose after her insured status had expired.

The dissent by Judge Moore in *Bowie*, however, would always require the ALJ to make

an analysis. *Bowie v. Commissioner of Social Sec.* 539 F.3d 395, 403 -404 (6th Cir. 2008):

> I believe that the majority opinion mistakenly concludes that the guidelines set forth in the Hearings, Appeals and Litigation Law Manual of the Social Security Administration ("HALLEX") negate the extensive precedent requiring ALJs to discuss whether a potential borderline case falls within that category. Instead, I believe that we should follow the lead of the Tenth Circuit decision in *Daniels v. Apfel,* 154 F.3d 1129 (10th Cir.1998), and hold that in potential borderline cases, ALJs must provide some record of their thought process regarding the requirements of § 404.1563(b). *See also Russell v. Comm'r of Soc. Sec.,* 20 F.Supp.2d 1133, 1135, 1136 (W.D.Mich.1998) (holding that "when a borderline situation is presented a factual determination must be made as to the appropriate age category ... [and that] the ALJ's failure to explain his choice of age

- 10 -

category in a borderline situation ... impedes judicial review"); *Pickard v. Comm'r of Soc. Sec.,* 224 F.Supp.2d 1161, 1169 (W.D.Tenn.2002) (adopting the Tenth Circuit's rationale in *Daniels* and recommending that the case be remanded because "[t]he ALJ's failure to address the borderline issue and to explain his choice of age category ... impede this court's ability to review his application of § 404.1563(a)"); . . .

        *      *      *

Additional support for the holding of *Daniels* rests with 20 C.F.R. § 404.953, which requires that "[t]he administrative law judge shall issue a written decision that gives the findings of fact and the reasons for the decision." § 404.953(a). In a case in which the claimant's age indicates that he or she might well fall within a borderline age category, the ALJ's failure to note that the ALJ has considered whether a claimant falls within a borderline category and, if so, whether bumping the claimant up is warranted, constitutes a failure to offer findings of fact and reasons for the decision. *Russell,* 20 F.Supp.2d at 1136.

**Is this a Borderline Age Situation**?

Generally, courts hold that a person within six months of the next higher age category is considered "borderline." *See Pickard v. Commissioner of Soc. Sec.,* 224 F.Supp.2d 1161, 1168 (W.D.Tenn.2002). Here, the ALJ discussed whether to apply the borderline age criteria and declined to do so. This is not error.

In *Gallagher v. Astrue* WL 929923, 5 -7 (D.N.H.,2009), Gallagher age fifty four, argued that the ALJ erred by failing to consider his borderline age situation of being five months shy of his fifty-fifth birthday. Noting that the First Circuit had not weighed in on either the range of months that place a claimant within the borderline category or whether and the extent to which an ALJ must address the borderline-age issue in a decision or at a hearing, the Gallagher court looked at decisions from other circuits. The courts varied in their interpretation of the time period of the "borderline" range.[1] According to the Gallagher court: "The general consensus is

---

   [1]The circuit and district courts did not reach a consistent conclusion on this issue. *See Bowie v. Comm'r of Soc. Sec.,* 539 F.3d 395 (6th Cir.2008)(holding that there is not a *per se*

that 'the borderline range falls somewhere around six months from the older age category.' "

*Furtado v. Astrue,* 2008 WL 2950782, at *10 (D.R.I. Jul.25, 2008)(quoting *Swan v. Barnhart,*

2004 WL 1529270, at *9 (D.Me. April 30, 2004)). Accepting this "general consensus," the

Gallagher court held that plaintiff who was five months from reaching his fifty-fifth birthday

when the ALJ reached his decision, was within the borderline range of the advanced age

category.[2]

Decisions by the Court of Appeals in other circuits offer a different timeline as to when a

borderline situation begins. See, *Martin v. Astrue* WL 3071484, 6 -9  (W.D.Pa.,2008) (collecting

cases.)  That court noted that in *Lambert v. Chater*, 96 F.3d 469, 470 (10th Cir.1996), the United

States Court of Appeals for the Tenth Circuit held that seven months was <u>not</u> a borderline

---

procedural requirement that an ALJ must address borderline age categorization and explain his
thought process in every borderline case); *Daniels v. Apfel,* 154 F.3d 1129 (10th
Cir.1998)(holding that the Commissioner has the burden of showing what age category should
apply and hearing officers are required to provide a record of their determination regarding
404.1563 requirements); *Crawford v. Barnhart,* 556 F.Supp.2d 49 (D.D.C.2008) (remanding
because the ALJ should have recognized a borderline age situation and explicitly considered the
appropriateness of the older age category, even though the ALJ called a vocational expert);
*Justice v. Astrue,* 589 F.Supp.2d 110 (D.Mass.2008) (remanding because the hearing officer's
decision provided no record of his consideration of the potential borderline age situation).

[2]The court noted that an individual of advanced age with an RFC for light work is
deemed disabled unless he has significant transferable skills. 20 C.F.R. Pt. 404, Subpt. P, App. 2
§ 202.00(c).  Like our plaintiff, if Gallagher had been placed in the advanced age category,
because he had an RFC for a limited range of light work and no evident transferable skills, the
Grids would have dictated a finding of disabled. Accordingly, although Gallagher was not
necessarily entitled to placement in the advanced age category, at a minimum, he was entitled to
consideration of his borderline-age status. *See* 20 C.F.R. § 416.963(b).

- 12 -

situation. Similarly, in *Russell v. Bowen*, 856 F.2d 81, 84 (9th Cir.1988), the Ninth Circuit ruled that a claimant who was seven months away from his sixtieth birthday was <u>not</u> in a borderline situation. This suggests that seven months, and therefore any length of time beyond seven months, is not a borderline situation. *Lambert v. Chater*, 96 F.3d 469, 470 (10th Cir.1996); *Russell v. Bowen*, 856 F.2d 81, 84 (9th Cir.1988).

In this case, plaintiff was eleven months from his 55th birthday at the time his insured status expired.  In this Court's estimation, the ALJ had no need to continue the inquiry and properly used the Plaintiff's chronological age.  He does not present a borderline situation.

It should also be noted that there are no vocational adversities identified even if plaintiff were borderline.  "Absent a showing of additional adversity(ies) justifying use of the higher age category, the adjudicator will use the claimant's chronological age-even when the time period is only a few days." HALLEX II-5-3-2. "Examples of [ ] additional vocational adversity(ies) are the presence of an additional impairment(s) which infringes upon--without substantially narrowing--a claimant's remaining occupational base."  The examples would include if claimant was barely literate in English, or had a history of work experience in an unskilled job(s) in one isolated industry or work setting.

Here plaintiff can read, write, and communicate in English.  Plaintiff's "limited" education is a circumstance taken into account in the various Rules and not subject to further consideration.  Plaintiff has been employed in the automotive industry his whole work life.  This industry is a major source of jobs in Michigan and a common work setting for the jobs identified

- 13 -

by the vocational expert.  It is not an "isolated industry" like forestry or fishing which are identified in the regulations as a vocational adversity.

**Conclusion**

The ALJ considered Plaintiff's status and declined to apply a borderline age analysis as if he were a person "closely approaching advanced age" under 20 C .F.R. § 404.1563(d). Because this Court finds that eleven months is not "within a few days to a few months of reaching an older age category" under 20 C.F.R. § 404.1563(b), no error is shown. Accordingly, it is recommended that Defendant's Motion for Summary Judgment be granted, Plaintiff's Motion for Summary Judgment be denied, and the decision of the ALJ that Plaintiff was not entitled to disability insurance benefits be affirmed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.


S/Virginia M. Morgan_____
Virginia M. Morgan
United States Magistrate Judge


Dated: August 24, 2009

---

## PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on August 24, 2009.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan

- 15 -